UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UBS FINANCIAL SERVICES INCORPORATED OF  :
PUERTO RICO and UBS TRUST COMPANY OF   :   Case No. 3:15-cv-03099-FAB
PUERTO RICO,                            :
                                        :
                                        :   **FIRST AMENDED**
                            Plaintiffs, :   **COMPLAINT**
                                        :
       -against-                        :
                                        :
                                        :
XL SPECIALTY INSURANCE COMPANY,  AXIS   :
REINSURANCE COMPANY and HARTFORD FIRE   :
INSURANCE COMPANY,                      :
                                        :
                            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiffs UBS Financial Services Incorporated of Puerto Rico ("UBS Financial PR") and UBS Trust Company of Puerto Rico ("UBS Trust PR"), by the undersigned counsel, as and for their First Amended Complaint against defendants XL Specialty Insurance Company ("XL"), AXIS Reinsurance Company ("AXIS") and Hartford Fire Insurance Company ("Hartford") allege as follows:

## NATURE OF THE ACTION

1.      This is an action for breach of contract arising from the failure of the insurance company Defendants to honor their obligations to reimburse legal fees, expenses and other losses incurred by Plaintiffs on behalf of themselves and their directors, officers and employees pursuant to a series of primary and excess contracts of insurance, issued to UBS IRA Select Growth & Income Puerto Rico Fund ("UBS PR Fund") by the insurance company Defendants, which insure the Plaintiffs against such losses and which are in dispute.  These legal fees, expenses and other losses have been incurred in connection with proceedings that Defendants accepted premiums to insure against, and explicitly agreed to reimburse.

2. This is also an action for declaratory relief pursuant to 28 U.S.C. §§ 2201 *et seq.*, in that an actual controversy presently exists between the parties hereto in which Plaintiffs ask this Court to adjudicate and determine the rights and obligations of the parties to the aforementioned series of primary and excess contracts of insurance by the insurance company Defendants, which are in dispute. A declaration is appropriate at this time in order that the parties' dispute may be resolved and that the parties may be aware of their respective rights and obligations.

## PARTIES

3. Plaintiff UBS Financial PR is a corporation duly organized and existing under the laws of the Commonwealth of Puerto Rico, with its principal office and place of business at 250 Muñoz Rivera Avenue, San Juan, Puerto Rico 00918.

4. Plaintiff UBS Trust PR is a trust company duly organized and existing under the laws of the Commonwealth of Puerto Rico, with its principal office and place of business at 250 Muñoz Rivera Avenue, San Juan, Puerto Rico 00918.

5. Upon information and belief, defendant XL is a foreign insurance company, duly organized and existing under the laws of the State of Delaware, with its principal office and place of business at Seaview House, 70 Seaview Avenue, Stamford, Connecticut 06902-6040.

6. Upon information and belief, at all times material to this action, XL was and is licensed and authorized to transact business in the Commonwealth of Puerto Rico.

7. Upon information and belief, defendant AXIS is a foreign insurance company, duly organized and existing under the laws of the State of New York, with its principal office and place of business at 11680 Great Oaks Way, Suite 500, Alpharetta, Georgia 30022-1000.

8. Upon information and belief, at all times material to this action, AXIS was and is licensed and authorized to transact business in the Commonwealth of Puerto Rico.

9. Upon information and belief, defendant Hartford is a foreign insurance company, duly organized and existing under the laws of the State of Connecticut, with its principal office and place of business at One Hartford Plaza, Hartford, Connecticut 06155.

10. Upon information and belief, at all times material to this action, Hartford was and is licensed and authorized to transact business in the Commonwealth of Puerto Rico.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(1), in that the dispute is between citizens of different states, and the matter in controversy exceeds $75,000, exclusive of interest and costs.

12. Venue is proper in this district, either pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred here, or pursuant to 28 U.S.C. § 1391(b)(3) because the Defendants are subject to personal jurisdiction here.

## GENERAL ALLEGATIONS

**A.     The Underlying Proceedings**

   **(i)     The Noticed Proceedings**

13. By separate letters to each of the Defendants dated October 14, 2013, UBS Financial PR gave notice of anticipated and actual claims against UBS Financial PR and certain of its employees and affiliates concerning its alleged practices in selling shares in certain closed-end mutual funds (the "Funds") that had significant investments in Puerto Rican government bonds (the "Bonds"). UBS Financial PR also provided Defendants with Statements of Claim filed with the Financial Industry Regulatory Authority ("FINRA") in two arbitration proceedings commenced against it: (a) the Statement of Claim dated September 23, 2013 in the proceeding entitled *Torres v. UBS Financial Services Inc. of Puerto Rico, et al.*, FINRA Case No. 13-2798 (the "*Torres* Proceeding"); and (b) the Statement of Claim dated September 30, 2013 in the

proceeding entitled *Gómez v. UBS Financial Services Inc. of Puerto Rico*, FINRA Case No. 13-2866 (the "*Gómez* Proceeding").

14. By separate letters to each of the Defendants dated December 13, 2013, UBS Financial PR gave specific notice of, *inter alia*, 21 additional FINRA arbitration proceedings commenced against it.

15. By separate letters to each of the Defendants dated January 24, 2014, UBS Financial PR gave specific notice of 32 additional FINRA arbitration proceedings commenced against it.

16. A listing of the 55 FINRA arbitration proceedings for which UBS Financial PR gave specific notice to Defendants (the "Noticed FINRA Proceedings") – *i.e.*, the *Torres* Proceeding, the *Gómez* Proceeding, the 21 proceedings noticed on December 13, 2013 and the 32 proceedings noticed on January 24, 2014 – is annexed hereto as Exhibit A.

17. By letters to each of the Defendants dated December 13, 2013 and January 24, 2014, UBS PR Financial gave specific notice of an investigation commenced by the Securities and Exchange Commission (the "SEC") in or about December 2013 concerning UBS PR Financial's alleged practices in selling shares in the Funds, SEC File No. FL-3840 (the "2013 SEC Investigation").

18. By separate letters to each of the Defendants dated February 14, 2014, UBS Financial PR gave specific notice and provided a copy of the Stockholder Derivative Complaint filed on February 4, 2014 against, *inter alia*, UBS Financial PR and UBS Trust PR in the Commonwealth of Puerto Rico Court of First Instance, Superior Court of San Juan in an action entitled *Casasnovas Balado v. UBS Financial Services, Inc., et al.* (Case No. K AC2014-0072) (the "*Casasnovas Balado* Action").

19. By separate letters to each of the Defendants dated May 14, 2014 and June 3, 2014, UBS Financial PR gave specific notice and provided a copy of the Class Action Complaint against, *inter alia*, UBS Financial PR and UBS Trust PR in an action entitled *Fernandez v. UBS AG, et al.*, originally filed in the U.S. District Court for the Southern District of New York as Case No. 1:14-cv-03252, then withdrawn and filed in the U.S. District Court for the District of Puerto Rico as Case No. 1:14-cv-01441, then transferred back to the U.S. District Court for the Southern District of New York and assigned Case No. 1:15-cv-02859 (the "*Fernandez* Action").

20. Collectively, the Noticed FINRA Proceedings, the 2013 SEC Investigation, the *Casasnovas Balado* Action and the *Fernandez* Action are the "Noticed Proceedings."

21. Plaintiffs properly gave notice of each of the Noticed Proceedings to each of the insurance company Defendants, and requested coverage from such insurers under the insurance policies described below.

**(ii)** **The Additional Proceedings**

22. Consistent with the notice of anticipated claims that UBS Financial PR provided by separate letters to each of the insurance company Defendants dated October 14, 2013, UBS PR Financial subsequently provided Defendants with a list of approximately 1,150 additional FINRA arbitration proceedings commenced against it, in which the claimants have asserted claims substantively similar or identical to those asserted in the Noticed FINRA Proceedings (the "Additional FINRA Proceedings").

23. Consistent with the notice of anticipated claims that UBS Financial PR provided to Defendants on October 14, 2013, UBS PR Financial subsequently provided Defendants with notice of an investigation of UBS Financial PR commenced by FINRA in or about February 2014 with respect to certain of the alleged practices that are the subject of the Noticed Proceedings, FINRA File No. 2013-039-1421 (the "2014 FINRA Investigation").

5

24. Collectively, the Additional FINRA Proceedings and the 2014 FINRA Investigation are the "Additional Proceedings." Collectively, the Noticed Proceedings and the Additional Proceedings are the "Underlying Proceedings."

25. Plaintiffs have given notice of each of the Additional Proceedings to each of the insurance company Defendants, and have requested coverage from such insurers under the insurance policies described below.

### B.   The UBS PR Fund 2013-14 Insurance Program

26. UBS PR Fund procured a "tower" of liability insurance coverage for itself and certain affiliated entities from Defendants for the period from January 15, 2013 to January 15, 2014 (the "Policy Period"). Such coverage consists of a primary policy and two excess policies, providing coverage for Claims first made or deemed to be made during the Policy Period.

### (i)   The XL Policy

27. XL issued the primary policy, Financial Services Liability Policy No. ELU128622-13, to UBS PR Fund for the Policy Period with a $10 million maximum aggregate limit of liability (the "XL Policy").

28. The XL Policy provides coverage to UBS PR Fund and certain affiliated entities, including Plaintiffs, identified therein, under two coverage parts, each of which is subject to a $500,000 Retention for each Claim: (a) the "Investment Advisers Professional Liability Coverage Part" (the "IAPL Coverage Part"); and (b) the "Mutual Fund Management Professional Liability Coverage Part" (the "MFMPL Coverage Part").

29. The XL Policy's IAPL Coverage Part defines "Insured" to include the "Adviser" and the "Insured Persons."

6

30. The XL Policy's IAPL Coverage Part defines "Adviser" to include UBS PR Fund, any Subsidiary created or acquired on or before January 15, 2013 and (pursuant to Endorsement No. 18) Plaintiffs.

31. Endorsement No. 18 to the XL Policy, the "Additional Advisers Endorsement," provides that "[i]n consideration of the premium charged, the term 'Adviser,' as defined in … the [IAPL] Coverage Part, is amended to include the following entities: UBS Financial Services Inc. of Puerto Rico [and] UBS Trust Company of Puerto Rico[.]"

32. The XL Policy's IAPL Coverage Part defines "Insured Persons" to include "any past, present, or future director, officer, partner, principal, member, trustee or employee of the Adviser," as well as "Supervisory or Managerial Personnel" (pursuant to Endorsement No. 4).

33. The XL Policy's IAPL Coverage Part's Insuring Agreement provides coverage for these Insureds – specifically including UBS Financial PR, UBS Trust PR and their directors, officers and employees – for "Loss resulting from Claims first made against the Insureds during the Policy Period … for Wrongful Acts."

34. The XL Policy's General Terms and Conditions define "Loss" broadly to mean "damages, judgments, settlements or other amounts ... in excess of the Retention that the Insured is required to Pay, and Defense Expenses, whether incurred by the Insurer or the Insured, in excess of the Retention."

35. The XL Policy's IAPL Coverage Part defines "Wrongful Act" to include "any actual or alleged act, error, omission, misstatement, misleading statement or breach of fiduciary duty or other duty committed by any Insured in the performance of, or failure to perform, Professional Services."

36. The XL Policy's IAPL Coverage Part defines "Professional Services" to include "financial, economic or investment advice given or investment management services performed

7

Case 3:15-cv-03099-FAB   Document 37   Filed 09/13/16   Page 8 of 15

for others for a fee or commission by the Adviser or on behalf of the Adviser by any person or entity."

37. Each of the Underlying Proceedings is a "Claim" against at least one of the Plaintiffs and other Insureds for "Wrongful Acts" covered by the Insuring Agreement of the XL Policy's IAPL Coverage Part.

38. Each of the Underlying Proceedings is a "Claim" against at least one of the Plaintiffs and other Insureds for "Wrongful Acts" covered by the Insuring Agreement of the XL Policy's IAPL Coverage Part

**(ii)     The AXIS Policy**

39. AXIS is the first excess insurer in the insurance tower, providing coverage in excess of that provided by the primary XL Policy.  AXIS issued Excess Policy No. RNN765155/01/2013 to UBS PR Fund for the Policy Period with a $5 million limit of liability in excess of $10 million (the "AXIS Policy").

40. The AXIS Policy "follows form" to the XL Policy, providing that unless specifically set forth therein, coverage under the AXIS Policy "shall apply in conformance with all provisions" of the primary XL Policy.

**(iii)    The Hartford Policy**

41. Hartford is the second excess insurer in the insurance tower, providing coverage in excess of that provided by the primary XL Policy and first excess AXIS Policy.  Hartford issued Policy No. 00 DA 0272876-13 to UBS PR Fund for the Policy Period with a $5 million limit of liability in excess of $15 million (the "Hartford Policy").

42. The Hartford Policy "follows form" to both the XL and AXIS Policies, providing that it is "subject to the same warranties, terms, conditions, definitions, exclusions and endorsements (… except as otherwise provided herein) as contained in the Primary [XL] Policy,

8

together with all the warranties, terms, conditions, definitions, exclusions and limitations contained in or added by endorsement to" the AXIS Policy.

## C. Wrongful Attempts by XL and AXIS Avoid Coverage

43. By letter dated December 2, 2013, XL denied coverage to UBS Financial PR with respect to the *Torres* Proceeding and the *Gómez* Proceeding.

44. Thereafter, by letter from XL's coverage counsel dated March 20, 2014, XL denied coverage to UBS Financial PR with respect to all of the Noticed FINRA Proceedings, the 2013 SEC Investigation and the *Casasnovas Balado* Action.

45. By letters from XL's coverage counsel dated May 22, 2014 and June 16, 2014, XL denied coverage to UBS Financial PR and UBS Trust PR with respect to the *Fernandez* Action.

46. The primary ground asserted by XL in denying coverage to Plaintiffs was that the Underlying Pleadings were Claims based on "Interrelated Wrongful Acts" that were specifically excluded under the "Specific Litigation Exclusion" annexed as Endorsement No. 2 to the XL Policy, which provides that no coverage will be available under the IAPL Coverage Part for any Claim in connection with five matters listed therein (the "Specified Proceedings"), "or in connection with any Claim based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any such proceeding or any fact, circumstance or situation underlying or alleged therein."

47. XL's coverage declination is in error, as the Claims stated in the Underlying Proceedings are sufficiently distinct from the Claims made in the Specified Proceedings that they neither implicate the Specific Litigation Exclusion nor constitute Interrelated Wrongful Acts with respect to any of the Specified Proceedings.

48. To date, XL has refused to reimburse Plaintiffs for their Defense Costs incurred in connection with the Underlying Proceedings, in breach of its obligations under the XL Policy.

49. By letters from AXIS's coverage counsel dated May 20, 2014, May 15, 2015 and May 26, 2015, AXIS denied coverage to UBS Financial PR and UBS Trust PR with respect to all of the Underlying Proceedings, based primarily on the same arguments raised by XL in its coverage declination communications.

## FIRST CAUSE OF ACTION
### (Breach of Contract Against XL)

50. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 49 of this Complaint as if fully set forth herein.

51. Upon information and belief, UBS PR Fund has paid all premiums for the XL Policy, provided all required notices, and has performed all of the terms and conditions of the XL Policy on its part to be performed, unless otherwise excused.

52. Plaintiffs, as Insureds under the XL Policy's IAPL Coverage Part, and therefore parties to the insurance contract, have performed all the terms and conditions of the XL Policy on their part to be performed, unless otherwise excused.

53. Plaintiffs have incurred Defense Costs in amounts exceeding the XL Policy's $500,000 Retention in connection with the defense of the Underlying Proceedings.

54. XL has breached its contractual duty under the XL Policy to reimburse Plaintiffs for Defense Costs incurred in connection with the defense of the Underlying Proceedings, including Defense Costs incurred by Plaintiffs on behalf of certain individual directors, officers, and employees.

55. As a direct result of XL's breach of contract, Plaintiffs have been deprived of the benefit of the insurance coverage for which XL was paid substantial premiums, and have been

forced to pay sums in the defense of the Underlying Proceedings, including attorneys' fees, experts' fees and supplemental expenses, which XL has a contractual obligation to pay.

56. As a further direct result of XL's breach of contract, Plaintiffs have been forced to incur and will continue to incur consequential damages, including, without limitation, attorneys' fees and other expenses in bringing this action, which damages are not subject to the limit of liability of the XL Policy.

57. Plaintiffs are entitled to recover their damages from XL under the terms of the XL Policy in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
**(Declaratory Relief Against XL)**

58. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 57 of this Complaint as if fully set forth herein.

59. Pursuant to the terms of the XL Policy, XL is contractually obligated to provide coverage to Plaintiffs for all Loss (as defined in the XL Policy) arising from the Underlying Proceedings once coverage is triggered.

60. As of the present date, XL has denied its contractual obligations and has denied coverage under the XL Policy.

61. Upon information and belief, UBS PR Fund paid all premiums for the XL Policy and has performed all of the terms and conditions of the XL Policy on its part to be performed, unless otherwise excused.

62. Plaintiffs, as Insureds under the XL Policy's IAPL Coverage Part, and therefore parties to the insurance contract, have performed all the terms and conditions of the XL Policy on their part to be performed, unless otherwise excused.

63. At all relevant times mentioned herein, the XL Policy was, and is, in full force and effect.

64. None of the grounds asserted by XL for the denial of coverage under the XL Policy provides a valid basis for denying coverage to Plaintiffs for the Underlying Proceedings.

65. An actual controversy exists between XL and Plaintiffs as to whether Plaintiffs are entitled to coverage for the Underlying Proceedings under the XL Policy, and judicial resolution of the parties' rights and obligations is necessary.

66. This Court should issue a judgment declaring that Plaintiffs are entitled to coverage under the XL Policy for Loss arising out of the Underlying Proceedings.

## THIRD CAUSE OF ACTION
### (Declaratory Relief Against AXIS)

67. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 66 of this Complaint as if fully set forth herein.

68. Pursuant to the terms of the AXIS Policy, AXIS is contractually obligated to provide coverage to Plaintiffs for all Loss (as defined in the XL and AXIS Policies) arising from the Underlying Proceedings once coverage is triggered.

69. As of the present date, AXIS has denied its contractual obligations and has denied coverage under the AXIS Policy.

70. Upon information and belief, UBS PR Fund paid all premiums for the AXIS Policy and has performed all of the terms and conditions of the AXIS Policy on its part to be performed, unless otherwise excused.

71. Plaintiffs, who as Insureds under the XL Policy's IAPL Coverage Part are also Insureds under the AXIS Policy and parties to the insurance contract, have performed all the terms and conditions of the AXIS Policy on their part to be performed, unless otherwise excused.

72. At all relevant times mentioned herein, the AXIS Policy was, and is, in full force and effect.

73. None of the grounds asserted by AXIS for the denial of coverage under the AXIS Policy provides a valid basis for denying coverage to Plaintiffs for the Underlying Proceedings.

74. An actual controversy exists between AXIS and Plaintiffs as to whether Plaintiffs are entitled to coverage for the Underlying Proceedings under the AXIS Policy, and judicial resolution of the parties' rights and obligations is necessary.

75. This Court should issue a judgment declaring that Plaintiffs are entitled to coverage under the AXIS Policy for Loss arising out of the Underlying Proceedings.

## FOURTH CAUSE OF ACTION
### (Declaratory Relief Against Hartford)

76. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 75 of this Complaint as if fully set forth herein.

77. Pursuant to the terms of the Hartford Policy, Hartford is contractually obligated to provide coverage to Plaintiffs for all Loss (as defined in the in the XL, AXIS and Hartford Policies) arising from the Underlying Proceedings once coverage is triggered.

78. As of the present date, Hartford has failed to perform its contractual obligations and has failed to provide coverage under the Hartford Policy.

79. Upon information and belief, UBS PR Fund paid all premiums for the Hartford Policy and has performed all of the terms and conditions of the Hartford Policy on its part to be performed, unless otherwise excused.

80. Plaintiffs, who as Insureds under the XL Policy's IAPL Coverage Part are also Insureds under the Hartford Policy and parties to the insurance contract, have performed all the terms and conditions of the Hartford Policy on their part to be performed, unless otherwise excused.

81. At all relevant times mentioned herein, the Hartford Policy was, and is, in full force and effect.

82. To date, Hartford has failed to assert a valid basis for denying coverage to Plaintiffs under the Hartford Policy for the Underlying Proceedings.

83. An actual controversy exists between Hartford and Plaintiffs as to whether Plaintiffs are entitled to coverage for the Underlying Proceedings under the Hartford Policy, and judicial resolution of the parties' rights and obligations is necessary.

84. This Court should issue a judgment declaring that Plaintiffs are entitled to coverage under the Hartford Policy for Loss arising out of the Underlying Proceedings.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests entry of judgment in their favor:

A. On the First Cause of Action, awarding Plaintiffs damages against XL for its breach of the XL Policy;

B. With respect to the Second Cause of Action, declaring that Plaintiffs are entitled to coverage under the XL Policy for Loss arising out of the Underlying Proceedings, including but not limited to Defense Costs;

C. On the Third Cause of Action, declaring that Plaintiffs are entitled to coverage under the AXIS Policy for Loss arising out of the Underlying Proceedings, including but not limited to Defense Costs;

D. On the Fourth Cause of Action, declaring that Plaintiffs are entitled to coverage under the Hartford Policy for Loss arising out of the Underlying Proceedings, including but not limited to Defense Costs;

E. Awarding Plaintiffs their attorneys' fees and costs and disbursements of this action; and

F. Granting such other and further relief as the Court may deem proper.

## **JURY DEMAND**

Plaintiffs hereby demand trial by jury on all issues in this Complaint so triable.

Dated: San Juan, Puerto Rico and New York, New York
September 12, 2016

> TORO, COLÓN, MULLET,
> RIVERA & SIFRE, P.S.C.
> P.O. Box 195383
> San Juan, PR 00919-5383
> Tel.: (787) 751-8999
> Fax: (787) 763-7760
>
> /S/JAIME E. TORO-MONSERRATE
> JAIME E. TORO-MONSERRATE
> USDC-PR No. 204,601
> Email: jetoro@tcmrslaw.com
>
> /S/ NAYDA I. PÉREZ ROMÁN
> NAYDA I. PÉREZ ROMÁN
> USDC-PR No. 300,208
> Email: nperez@tcmrslaw.com
>
>
> Of Counsel:
>
> Michael I. Verde (*Admitted Pro Hac Vice*)
> David L. Goldberg (*Admitted Pro Hac Vice*)
> Philip A. Nemecek (*Admitted Pro Hac Vice*)
> Tenley Mochizuki (*Admitted Pro Hac Vice*)
> KATTEN MUCHIN ROSENMAN LLP
> 575 Madison Avenue
> New York, New York 10022-2585
> Tel: (212) 940-8800
> Fax: (212) 940-8776
>
> *Attorneys for Plaintiffs UBS Financial*
> *Services Incorporated of Puerto Rico and*
> *UBS Trust Company of Puerto Rico*